Delva and Delva, good morning to both of you. Make yourselves comfortable. Before we begin, just a couple of observations for those of you who may not be familiar with our lighting system. You will note that we have a green light, which obviously means you may proceed, a yellow or amber light, which is a two-minute warning, and the red light means that your time is up. When you see the red light go on, we'd be much appreciative if you could bring your remarks to a conclusion. The only other observation I wanted to make before we proceeded, again for those of you who may not have appeared before us before, as you proceed with your arguments, you can safely assume that we have had a chance to review the briefs, the record excerpts, and in some of the all of the record as well, so feel free really to go to the heart of your argument. With that, we'll begin with U.S. v. Delva. Good morning, your honors. May it please the court, my name is Richard Rosenbaum. On behalf of the Delva brothers, Dan Delva will be known as Kenny, as he was known at the court below, and Beshear. Both Beshear and Danny were convicted after a trial by jury and a motion to suppress of various offenses concerning identity tax fraud and theft cases. The case arose in 2015, and while we have alleged that there was an unlawful search and seizure, that the evidence was insufficient as to Kenny, what I'd like to focus on today would be first of all the court's error in allowing the government to permit expert testimony in the form of a tax refund fraud expert who testified as to jargon and terminology that was typically or allegedly typically used in tax fraud and identity theft areas. No one in any of the briefs has cited to any case law wherein an expert has been declared in this type of case. While clearly there are experts that have been permitted to use their expert testimony in drug cases, in tax cases, and things of that nature, this court has never expanded Rule 702 of the Federal Rules of Evidence to allow for an expert with regards to an identity fraud. I'm not saying that that couldn't be done, but what I'm alleging is that in this case, Detective Ken Seeley from the Aventura Police Department wasn't properly qualified in this case, and there weren't the proper predicates laid to declare him an expert. Now he was declared an expert with regards to Kenny over an objection. Beshear did not have an objection, so that comes to this court upon plain error. And it's very akin to the same arguments that we started making years ago with regards to drug cases. The experts in this case, Detective Seeley, was able to know nothing about the case, know nothing about the specifics of the actual fraud that allegedly went on here, yet he was able to testify that certain terms meant... Let me be sure that I understand the heart of your argument. Yes, sir, Judge Marcus. We're reviewing it, by the way, here for clear error. Okay. With respect to what the government has to show, it has to show, one, that he's competent by way of background training and experience to opine. Two, that the opinion itself is methodologically sound. It's grounded in something that people in that field might recognize. And three, that it might help the trier of fact. If I understand your argument, you're quarreling with the trial judge's determination only as to the first prong, the competence to opine in the field, or is there something else you're saying beyond that? Well, Judge, I believe that it also spills into the second area. I don't believe that it's based upon... Okay, so you're challenging the methodology as well as the competence? Yes, sir. But you're not disputing that something like this might help a trier of fact, I take it? In certain circumstances, I believe expert testimony... There might be lingo that's used here that the trier of fact would have no way of knowing, and that could help the trier of fact. Perhaps, yes. Okay, so tell me as to the first prong, as to the competence to opine. He said that he participated in scores of fraud investigations, sometimes in an undercover capacity. He said that, by way of foundation, that he interviewed dozens of defendants charged with stolen identity refund fraud, reviewed their recorded calls, taught classes on fraud-related topics, and had testified previously as an expert in federal court, not only in fraud investigations, but in terminology, at least in one occasion. Do I have that affair summary? Yes, sir. Why isn't that foundationally sufficient to allow the district court playing its admissibility role to say, he's competent? Well, there are various forms of identity theft fraud, and this expert was never designated as to what type of area. Again, I think the closest analogy is dealing with drugs. While someone might be an expert in crack cocaine cases, they may not be in another type of substance. The words here were fairly innocuous words, such as plastic, meaning credit cards, or in this case, the expert even took the quantum leap as to the green dot cards, which were the cards that were ultimately used after the they came from the ATM. As we talk about the expert witness, did the expert have occasion to know anything about this particular group, this particular dialect? There are many, many CJA cases that I've handled that deal with this type of fraud, and some of them are from different ethnic groups and different cultural groups, and I suspect that the terminology that's used in the different groups varies from one to another, and so we believe that a one-size-fits-all type of expert is not sufficient in this case. Couldn't you cross-examine the witness on those aspects, just like you would do in any other area where you thought the witness might not have the full story, and let the jury hear why that expert might not be correct in this instance? Right, but that could be done, but the actual cross-examine is not very effective, because the experts already come to his conclusion as to what innocuous terms mean, their sinister meaning, and what does a defense lawyer do? Stand up there and say, well, that's not true, that's not true. There's no way to really do that other than to perhaps bring another expert, but I'm arguing that an expert was not proper in this specific case under these circumstances. So how, given that we've obviously got a lot of cases that allow these types of jargon experts, how would you propose an expert be qualified in a case like this? What are the differences between what happened here and what you think is appropriate? I think that the expert needs to be able to draw some facts from the case into what his expert testimony is going to be. He needs to assimilate the facts in order to come out with the jargon and the terminology that's used. He needs to have some understanding about the case and what they're involved in. In this case, the expert had no involvement in the case whatsoever. He didn't review the videotape of the undercover. But that's hardly fatal to any expert anytime. Experts testify in federal court all the time without having been involved personally in the case. For example, pathologists come in and they review reports, forensic reports from somebody else. Orthopedic surgeons operate. And then someone else comes in and says, I've reviewed. I've reviewed the MRIs. I've reviewed the CAT scans. I've reviewed a variety of things. Wasn't involved even as a treating physician. So it would not be unusual for an expert to otherwise be qualified and be able to opine without actually having had anything to do specifically with that particular case. Why is that fatal? I'm missing it. In your pathologist example, I see that as being very distinguishable from the scenario here. Here you're dealing with words that are said during a meeting. And you're trying to interpret those words. But didn't this expert say something like, he said the word FOS, F-O-S, is a term identity fraudsters use for information or information like the name, date of birth, social security number, et cetera, of an individual. I venture to say there aren't three people in this courtroom who would know that terminology, that vernacular, the word FOS. So it would certainly help a juror. Now if he's otherwise qualified having heard the term used on multiple occasions in these kinds of investigations, why couldn't he opine about meaning of that word? I'm missing what it is that would yield reversible error on the part of a district judge who said, I'll let it in. Well, our contention is that by taking the innocuous words and then giving them a sinister meaning that the expert has been permitted to take this from an innocuous situation to one which potentially violates the law based upon only the expert's testimony when he has no knowledge. No knowledge about the particular case or no knowledge as a general matter about the use of particular terminology? About the particular case. He may be very knowledgeable in how the terminology is used in certain cases. And I believe that the pathologist situation is quite different because pathologists are used to looking at the evidence that they look at separate and apart from what has occurred that caused the pathology. Here we're talking about what happened in an ongoing alleged conspiracy. And the expert is using the words to try to tie in the defendants to the conspiracy. I hate to cut you off, Judge Marcus. No, no, go ahead. I see that my time is waning. I would like to touch on the sentencing issue because as you know, in this case, Bashir testified, Bashir took all the blame. Bashir said my brother had nothing to do with this. There were firearms that were open and present leaning against the wall in the townhouse. Excuse me, the townhouse was occupied by at least six or seven people, some of whom were cousins of the informant, that he didn't say. The question becomes whether Kenny actually had these firearms in a position that under 2B1.1, he should have been assessed the two points. And we urge the court to reverse based upon the grounds set forth in our initial brief. When they left the townhouse that day, did they take the firearms with him? No, Your Honor, they stayed in the house. They stayed in the house. So they abandoned the townhouse and left everything there? We're assuming so. One individual was followed as he left. He was an unknown male and he got away. And the second individual that went was Bashir. And Bashir drove a Mercedes and parked the car and then he was apprehended. Okay, so the firearms were still in the house? Yes, ma'am. Okay, thank you. Thank you. And you have the floor. Good morning. May it please the court. Good morning. My name is Brandy Bryn Terry-Gallar and I represent the United States this morning. To start with the expert testimony in response to that, the expert in this case was qualified broadly as an expert in fraud. And his experience in that pointed out very clearly in the record. He had been an identity theft task force officer. So identity theft, which is exactly the crime that we have here. He had been specialized as a task force officer since 2012. He had trained with the IRS, Secret Service, HSI, all of those three government agencies. And then on the private side, he had trained with Citibank and Discover, Broward Community College, and Broward Police Academy. He had conducted over 75 fraud investigations, over 30 different individuals jail calls that he had listened to. He had been involved in more than 20 debriefs. He had personally played the role of an undercover at least three to five times, taught numerous classes regarding fraud, testified in 30 to 40 fraud cases, and had also he'd not only done identity theft, but he'd done identity theft whereby they're using the ID and PII to get tax returns, refunds, just like happened in this case. Correct, Your Honor. Get him false tax returns, then get it put on debit cards. So it was exactly the same MO as in this case that he had worked on. What we know for sure, what the record reflects is during his questioning about that, and what he clarified there is that his experience included a number of tax fraud investigations. So being an identity theft TFO involved in tax fraud investigations would certainly suggest that it was this same exact kind of fraud, the stolen identity refund fraud. So given that broad base of his experience and training, our position is that the District Court was well within its discretion to go ahead and accept him as an expert witness in the case. And then our position is that he used, he called upon all of that experience that he had in that some of the language that was used in this case by the defendants on the video that the average lay person, an average juror, might not be familiar with. So he was able to identify some of that jargon and give it meaning, as well as just give the jurors a broader basis of a background in this unique kind of fraud of the stolen identity tax refund fraud. Are you aware of any case that requires an expert witness to have particular involvement with the investigation or the criminal charges at hand? My understanding, Your Honor, is that it can go either way when an expert is testifying in this regard. There are some cases where the expert had no involvement whatsoever in the investigation itself and was only called upon to give background information about the kind of fraud, or I'm sorry, the kind of crime, or to interpret certain terminology. There are other cases where the expert was very involved and had listened to hundreds of wiretap recordings. And it was based in part on that knowledge of everything that happened in that specific case, in addition to their broader experience in other cases, that they were qualified as an expert. I think the thrust of the question is whether the expert must have some personal knowledge about the case. Sounds like the answer is no. I don't believe there is, Your Honor. I think that it's possible to present the expert with expert to interpret those terms. Certainly, it did help the jury in this case. So all three then of the requirements are met. Well, to clarify, did this expert listen to the recordings that have been taken at the townhouse? So how it played out at trial, Your Honor, is that the expert testified generally about the SURF stolen identity refund fraud, and then at some point defined certain terms like dump, work, plastic, PD, and confirmation, and then was allowed to hear and play part of the video recording that the cooperating suspect had made when he went into the apartment building? Yes, that's my question. Did he listen to it only during the trial or before he gave his other testimony? I'm not sure that the record is crystal clear on that. I do think that we can infer from the record that in his preparation for testimony, it was not the very first time that he had heard the recording in court. And he was able to give meaning then to those particular words that he was asked about. He was able to place them in context within the conversation that was happening during the recorded video. He did not give any sort of ultimate opinion about whether the speaker was in fact guilty. And that is really the line that has evolved over the years. As far as when an expert's testimony goes too far. Was there a transcript of the conversation on the recording at trial? There was, Your Honor, and parts of it were in Creole, so it was a translation transcription. Paper copies of that were provided to the jurors directly. Did they take it to the jury room? Or do you know? I just had it in front of them while they listened to the recording. Well, they definitely had it in front of them while they listened to the recording. Moreover, the recording itself, the video that was played, had married up the transcript in simultaneous time with the video itself. So as the video was playing on the screen, the lines, almost like closed captioning, was appearing on the bottom of the screen with the transcript. If there are no further questions on the expert testimony, I'll address if there are any questions about sentencing. We leave it to you if you want to add anything. If not, we thank you much for your efforts. Well, I have a question about count three. Sure. You want to deal with the firearm first? I have nothing specifically to add beyond my brief on the firearm, so I'm happy to answer anything. Well, the firearm stayed in the townhouse, okay? And so everybody gathered up all the credit card documents and everything and fled the townhouse because they thought somebody was watching. But the firearms were left there. That's his argument. So there was no connection. Well, the firearms, it's true that the firearms were left there, but so was a mountain of other evidence of the tax fraud. They did not have time to completely clean out all of the everything from the house. Okay. And it was in plain view in the room where they all were? It was, Your Honor, yes. The panel indulged me. I have some problems on count three. I'm concerned whether or not we have all the evidence in the record or not to support the verdict on count three. And since you'll have some rebuttal time, I wanted to raise this with you because I can't find the evidence. Count three lists five people, and I think three of them came and testified. That's my personal identification. I've never allowed these two defendants to use it. So we know who the five people are in count three. And the reason why I ask it, because it's aggravated and has the consecutive 24-month sentence. Are you with me on what I'm talking about? I believe so, Your Honor. Okay. It's count three where they had to possess the information, Social Security numbers, dates of a real person, and that's what's charged there. And I took the names of those five people, and then I looked at Exhibit 12, which is the tax returns that were actually filed, and none of those people are on the tax returns. Are you familiar enough with the record to know what I'm talking about? I understand what you're talking about with Exhibit 12. I have not personally... Okay. But do you understand the people in count five are not listed on Exhibit 12? I understand that that's what you're telling me now. Well, that's what I understand the record. I could be wrong. That's why I'm asking you these questions, but you don't know the record well enough to tell me what you're saying. Since that had not been an issue that was raised by the defense... Right. So I guess... It is raised by the evidence, and what I'm trying to do is to see is there any evidence here that would lead them to believe they were real people, okay? Yes, Your Honor. And there absolutely is, and I think it is circumstantial evidence. And where is that evidence? Because let me tell you, the next thing is, all of the documents are in boxes, banker boxes that have, I assume they have these people's but all we have in the record is a photocopy of the banker's box. We don't have... I couldn't find any banker's boxes, no documents whatsoever in our record of exhibits. I think it's by BCD. They all went out with the jury, and I can only assume that's where it is. Do you know what I'm talking about? I do, Your Honor. And I saw that myself, that when the exhibits were filed with the court, that certain exhibits were only a photograph of the box, which is not very helpful. I understand. It's not only not very helpful, there's no evidence before the court. I couldn't find a single document in the record that has the names in any PII of the people alleged in Count 3 that carry a consecutive 24-month sentence. No evidence of any document in the record with their data on it. So I don't know what we do about that. Well, I would have two things to respond, Your Honor. Okay. First, as far as whether or not someone is a real person. These people came and said I'm a real person. Okay, we know they were real people. It's how did they know it? Okay, we don't have any documents that they even had their ID. Are you following what I'm saying? I think I may have lost you now. Okay, I'm saying there's not a piece of paper in the record that has Linda Church's name on it with any of her ID, okay, or Jeffrey Fluke or Catherine Lawson. I think it's in those banker boxes. It's just not in the record. Are you following me? I do. I haven't looked at the banker's boxes completely myself, so I'm not able to point you to which piece of paper it would be that would fulfill that. However, what... See, this is a problem. Y'all should have scanned all the documents into the record. We consistently have this problem in the Southern District. And then we would have copies of whatever the evidence is. I think it was admitted. Do you mean, I mean, I think the boxes were admitted. They say admitted on the courtroom deputies exhibit list. They were, Your Honor. They were definitely, as far as I understand, based on the record, we can see that each piece of evidence that was identified was admitted. But I understand the problem with not having been able to review that. You said there was circumstantial evidence. What was it? Well, there's case... Erring on this issue. I know what the cases say. So... I want to know about the factual impairments in this case. With the point that you're, you're concerned that... If you have a document with the data on it, that's circumstantial evidence. You thought that was a real person. I understand that. I'm trying to get to where's this, what is the circumstantial evidence? That's Judge Marcus's question. Which piece of paper shows that they possess that particular... Any circumstantial evidence. Right. When I was speaking about circumstantial evidence, I think I was on a different track. Let me ask the question then this way. You put on a fraud expert who said that the seized documents with the PII appear to include medical billing sheets, ledgers, and hospital patient printouts. And an IRS analyst testified that refunds had been requested in connection with the seized... That matched up against those PII documents. Correct. Did I misapprehend that? No, you did not. And there was... Why don't you explain to me what the evidence showed in that respect? The evidence showed that the... Someone from IRS, but also from Social Security had testified that they had reviewed all of the information that had been seized in the case and cross-referenced those names and Social Security numbers or dates of birth with their records. And out of the... The Social Security expert was able to... Or not expert, but the Social Security witness was able to testify that out of the 1,600 and approximately 90 names that she reviewed that were provided to her, only 16 of those did not come back as being real Social Security numbers. I would need, though, however, to double-check to make sure the five names that were charged in this case do appear in that list of 1,600 names. All right. Thank you. Thank you. Okay. Please, the court. Judge Hull, I obviously raised sufficiency of the evidence and argued that there were no real people. I did see the boxes that you refer to in the record, and I likewise have not matched up the 16 individuals to see whether those were the same individuals that are... This is not a claim that you made in the blue brief and that you're not making now, is it? No, it isn't, Your Honor. We had alleged insufficiency of the evidence, and the real person argument... Going to something else. Insufficiency went to something else, though. Yes, we focused on different... The insufficiency of the evidence didn't go to the issue being raised now. We did discuss whether there was knowledge that the defendants knew that they were real people. Yes, that I understand. With regards to the expert, the prosecutor... Knowledge as to whether they're real people, they still got to have those people's IDs or something about those real people. They do. Right, but you agree those boxes were admitted into evidence. They were. So we just don't have the scanned copies of the documents that are in the boxes is the problem. Right, and at this... Where do you think the boxes are? If you saw them, where are they? I do not know where those boxes... What's normally been happening, the clerk's office down here just gives all the government back the evidence, which we've told them not to do, but that's what keeps happening. But I'm curious if that's what's happening in this case. They just give it back to the government, and nobody puts it in the record. I can tell the court, I have two boxes of materials. I wasn't the trial lawyer, and I do not have those boxes, Exhibit 5. Okay, there are three boxes. I think it's 5C, B, and so on. I was just curious where the boxes and the evidence was. Yes. Okay. With regards to the government saying that the expert obviously helped the jury in this case, I'm not real sure how the government makes that assertion. It's probably more akin to help the jury convict in this case. The expert inserted criminality. He said, well, there's almost always guns involved in identity theft cases because these people might be armed and they might be dangerous. This is exactly what an expert shouldn't do, is try to insert prejudice into the case. This expert should not have been allowed in this case. Let me, you're raising now a slightly different argument. The first argument, as I understand it, regarding the experts, is that the trial judge abused his discretion in determining, one, that the witness was competent as an expert to opine, and two, in saying that the foundation, the methodology was sufficient. I understand that argument. Now you're saying, and you do argue it in the brief, I just want to be sure I know what you're going to, is that even assuming arguendo that the witness was qualified by background and he was able to give an opinion about the meaning of the terms, he did more than that. He gave ultimate opinions about the ultimate outcome of the case and thereby invaded the province of the jury. That's what you're saying now. Correct. Where in the record will I find a particular comment made by the expert that invaded the province of the jury, as opposed to saying, this term means this, this term is used by fraudsters in general, etc. Where does he go too far? If the court refers to docket entry 150 at page 499, that is when the expert said a lot of individuals we have dealt with are armed when we're doing these crimes. Between pages, I have 454 to 462, was where the government first started dealing with the expert and giving his general meanings. And it's, again, our contention, and I think that the court knows what we're arguing here. Because I understand what the general argument is. What I'm looking for is some particular assertion by the expert that went beyond saying, this is what fraudsters say, this is what fraudsters generally do, this is their lingo, but somehow went beyond that and amounted to an invasion of the jury's process. That's the argument that you're making now. Yes, sir. Docket entry 150 at page 483 is, I think, a representative example. Yes, 483. The state detective, and again, we're dealing here with mostly federal crimes, and so they're saying that this state agent has great expertise. But the detective claimed that the term work meant opening credit card accounts and filing false tax returns using the victim's PII. That went above and beyond just interpreting a word. If an expert in the drug field were to walk into a courtroom, and he said, I've been involved in 1,500 undercover cases and investigations, and the word marijuana is used in lingo in a variety of ways, like weed, grass, whatever, and he comes up with some other obscure reference to a name that you might never have heard of, wouldn't he be free to say, folks who deal in marijuana refer to it as X, that this is the lingo that dopers use? Why couldn't an expert say that? I think he could refer to the language and the jargon. Isn't that what you have here? Or if not, I may have missed the reference that you just made. Well, he's, in this case, the detective was not only referring to his interpretation of the words, so marijuana is, say, pot. But he's saying that work means A, B, C, and D, and there has been no showing that that's actually true. It's just an expert's opinion. Obviously, it's subject to cross-examination and can be impeached, but it's our contention that he shouldn't be able to give that utterance to begin with. Let me ask the question this way. Before you can establish a basis to reverse on the grounds that the district judge improvidently admitted the testimony, you've got to show that the ruling by the trial judge was manifestly erroneous. It's a real high burden when we look at abuse of discretion in the particular field of a judge playing the Dalbert role of flashing the card green or red. Where's the manifest error? Judge, we believe that there's manifest error because of the prejudice that was caused. Not only did the expert give the jury more information than simply an explanation, he gave additional information that inferred criminality. He inferred the dangerousness. He inferred the fact that there would be arms in what was, in essence, just a simple PII identity fraud case. So he's... The heart of the argument really goes beyond competence and methodology and says he said too much and went too far, even if he was qualified. And that that created error. We ask the court to reverse as to the judgment conviction. Do you know in the evidence where this list of 1,600 people, Social Security, HR, do you know where that is in the record? Okay. It was testified to by the last witness that testified. No, but the document that has the 1,600 names on it. I don't know off the top of my head, Your Honor. Is there even such a document or do you know? I don't believe that's contained on the summary. So I don't believe there is a document. I thank the court for its time. Thank you very much. Thank you both. And we'll proceed with the next case, which is the American Civil Rights Union versus Brenda Snipes.